GEORGE LYNCH AND LORETTA LYNCH, HIS WIFE, PLAIN-
TIFFS-APPELLANTS, v. GALLER SEVEN-UP PRE-MIX
CORP., 7-UP BOTTLING CO. OF ESSEX, INC., THE COR-
NELIUS COMPANY AND KEROTEST MANUFACTURING
CORP., DEFENDANTS-RESPONDENTS.

Argued April 5, 1977—Decided August 2, 1977.

Mr. *Charles Rodgers* argued the cause for appellants (*Messrs. Breslin* and *Breslin,* attorneys).

Mr. *Lawrence Weintraub* argued the cause for respondent Galler Seven-Up Pre-Mix Corp. (*Mr. Weintraub,* attorney; Mr. *Edward E. Feleppa, Jr.* on the brief).

*Mr. Christian Steuben* argued the cause for respondent The Cornelius Company (*Messrs. Morrison & Griggs,* attorneys; *Mr. Kevin O'Halloran* on the brief).

PER CURIAM. Plaintiff George Lynch was injured on June 13, 1977, by an exploding pressurized soda canister while he was tending bar at the Moose Hall in Lodi, New Jersey. Suit was commenced against Galler Seven-Up Pre-Mix Corp., the distributor of the soda canister, 7-Up Bottling Co. of Essex, Inc., The Cornelius Company, the manufacturer of the canisters and Kerotest Manufacturing Corp., the manufacturer of the gauges on the pressurized canisters. The complaint by Lynch and his wife alleged generally that one or all of these defendants had been negligent in manufacturing, designing, supplying and utilizing the pre-mix soda canister, and as a result of such negligence the canister exploded injuring plaintiff. There was no pretrial conference or order.

The matter was tried with a jury. During plaintiffs' case, motions for dismissal by defendants Kerotest and 7-Up Bottling of Essex, Inc. were granted. At the conclusion of the taking of evidence, the case was submitted to the jury which returned a verdict in favor of the remaining defendants. Thereafter plaintiffs brought a motion for a new trial which was denied. The Appellate Division in an unpublished opinion affirmed the jury verdict. This Court granted certification. 70 *N. J.* 519 (1976).

Plaintiffs' primary contention is that by failing to grant their motion to amend their theory of negligence to conform with the proofs adduced at trial, a "trial on the merits" was foreclosed. We disagree.

Plaintiffs' expert testified that the explosion was caused because an improper size cap cover was used on the soda canister. This conclusion was based upon his measurements of the canister involved in the explosion, which were compared with several other canisters he found on the premises. As a result, he believed that defendant Cornelius Company manufactured two types of canisters which had differ-

ent size openings and required different size caps. He opined that if a smaller size cap was used in the larger size opening an explosion, such as occurred in this case, was possible and that it was poor engineering design to make products which looked so similar and did not have any identification system to prevent a mismatch of the smaller caps with canisters having the larger openings. The expert concluded that Cornelius Company should have color-coded the caps or used other means to differentiate the caps and that Galler Seven-Up was negligent in placing the wrong size cap on the canister they filled and distributed. This testimony was consistent with the expert's report that plaintiffs had supplied in answers to interrogatories.

On cross-examination the plaintiffs' expert admitted that he never checked with Cornelius Company to verify his conclusion nor tried to obtain the actual specifications of the manufactured canisters. He also admitted that if it could be shown that in fact only one size of canister was manufactured and the caps were uniform and could be used interchangeably, he would no longer conclude that the explosion was caused by use of a mismatched cap.

The defendants utilized various witnesses to prove that there was no difference in size between the models of canisters and all the caps were uniform and used interchangeably on the canisters. According to the defense expert, the accident could not have occurred as hypothesized by the plaintiffs. In response to a question, he stated that the observable difference in the size of the opening of the canister actually involved in the explosion could have been caused by someone twisting or banging the cap.

Apparently plaintiffs' counsel realized that this theory of liability had been effectively weakened or rebutted. Consequently, he sought to explore a new explanation for the explosion during cross-examination of defendants' expert. When objections to such questions were sustained, counsel then argued out of the presence of the jury that because the cap which exploded bulged outward while all normal caps

were flat, the jury could infer that the cap had become distorted from use over a long period of time. It was suggested that the constant pressure under which the canisters were charged over a period of time caused the metal to weaken and the cap to bulge, eventually resulting in the explosion. This theory was offered despite plaintiffs' own expert having previously testified that the changed shape of the cap was not caused by constant pressure over a long period of time. The court refused to allow plaintiffs to explore this theory on cross-examination of defendants' expert. Plaintiffs then moved to amend the orginal "contention" of their expert to conform to the evidence of the case. This motion was denied.

Later, out of the presence of the jury, plaintiffs' counsel renewed his proffer through the presentation of testimony of his expert. The expert stated at this time, in total variance from his submitted report and prior testimony, that the distortions of the covers "would have to be caused by pressures being exerted upon the metal as a result of flexure due to uneven support or unevenly applied support as a result of the gasket not supporting the flange all the way around", and that "internal pressure distortions would cause the opening to become larger in the tank and would cause the cover dimension to be smaller on the outside dimensions." This distortion "caused the size changes [and] was a factor" allowing the gasket to move, "thus voiding the support of the cover and allowing an explosion." Significantly, he did not mention whether this phenomenon occurred gradually over a period of time, as had been suggested by counsel in his earlier proffer to the court.

In rejecting the proffer, the trial court referred to *R.* 4:9-2, which authorizes amendments to pleadings or the pretrial order to conform to the evidence. In actuality, the complaint sounded in negligence and its broad allegations could easily encompass the particular factual theory of negligence projected by plaintiffs in their proffer. Thus, in a sense no amendments to the pleadings (there having

been no pretrial order) were necessary. Nevertheless, plaintiffs' new theory was totally at variance with their pretrial discovery disclosures and the evidence theretofore presented, and, in this context, we find no abuse of discretion in the court's ruling.

The theory proffered by plaintiffs was totally inconsistent with the prior testimony and the written report of its expert which had been received in evidence. See *R.* 4:17–7; *cf. Clark v. Fog Contracting Co.*, 125 *N. J. Super.* 159 (App. Div. 1973); *Branch v. Emery Transportation Co.*, 53 *N. J. Super.* 367 (App. Div. 1958); *contra, Hillas v. Westinghouse Electric Corp.*, 120 *N. J. Super.* 105 (App. Div.), certif. den. 62 *N. J.* 83 (1972). It is abundantly clear that a contrary ruling by the court would have redounded to the prejudice of defendants

Moreover, the proffer was highly speculative and was more exploratory than definitive. *Cf. Schlossberg v. Jersey City Sewerage Authority*, 15 *N. J.* 360, 370 (1975). No factual basis or foundation for the new thesis was shown. For example, the expert had previously testified that he made no investigation of the composition or alloy of the metal top to determine its durability and strength. Similarly, there was no suggestion as to any defect in design which might have been a causative factor in the displacements which allegedly caused the explosion. In short, apart from the bald, conclusory statements of the expert, there was nothing offered by way of additional testimony or other evidential proof to generate a plausible inference that the distortion of the cap had in all probability been caused by its continuing exposure to high pressure gas, as urged by plaintiffs' counsel. The sparseness of the anticipated evidence was not redressed in the slightest by the subsequent motion for a new trial. This motion was supported only by the affidavit of counsel which reiterated the naked theory of the expert without any additional facts, or any further information or reports indicating how this new theory could be developed and substantiated. We conclude therefore that there was no abuse of

discretion on the part of the trial judge in ruling the proffered evidence inadmissible and further, in refusing to grant an adjournment of the trial or to grant a mistrial.

Plaintiffs further complain that the trial court failed to charge strict liability in tort as to defendant Galler Seven-Up, although ·such a charge was given with respect to defendant Cornelius Company. The judge stated that he believed such a charge "was not applicable in view of the specific allegations of a negligent act." The Appellate Division ruled that no error was committed because of the "complete absence of proof that any such defect or defects existed at the time of the explosion or at the time the canister and its top (cover) were shipped and delivered to the Moose Hall by defendant Galler." We agree.

█ In the context of establishing strict liability in tort, a product is defective "if it is not fit for the ordinary purposes for which such articles are sold and used * * *."; and a plaintiff may establish a defect by advancing proof, "in a general sense and as understood by a layman, that 'something was wrong' with the product." *Scanlon v. General Motors Corp.*, 65 *N. J.* 582, 591 (1974); also, *Moraca v. Ford Motor Co.*, 66 *N. J.* 454, 458 (1975); *Sabloff v. Yamaha Motor Co., Ltd.*, 59 *N. J.* 365, 366 (1971). Nevertheless, a plaintiff must still establish that any such defect was present while it was in control of the particular defendant. *Scanlon v. General Motors Corp., supra*, 65 *N. J.* at 591.

█ In this case, plaintiffs have not met this requirement. There has been no showing that some causative defect in the canister was in existence while it was in the hands of Galler Seven-Up. Thus, plaintiffs' expert's testimony that the manufacturer, Cornelius Company should have designed the caps of different color or markings so as to prevent possible mix-up would seem to justify the trial court's charge of strict liability in tort against Cornelius. The deficiency in plaintiffs' proofs with respect to Galler Seven-Up, however, consists of a failure to negate other likely causes of the accident for which this defendant would not be responsible.

*Scanlon, supra* at 593; *Jakubowski v. Minnesota Mining and Manufacturing,* 42 *N. J.* 177, 184 (1964).

■ Plaintiff Lynch had testified that a supply of canisters filled and ready to operate was always maintained at the Moose Hall. When new canisters were received, they were put in a storage area, and the older canisters were used first. He also testified that he did not know how long the exploding canister had been at the Moose Hall but that 8 to 10 canisters of each type soda were kept on the premises and that the canister which exploded could have been set up for use one to two weeks before the incident. Consequently, the inference was strong and unrebutted that the canister in question was on the Moose Hall premises for a period of time sufficient to permit frequent handling by third persons. He admitted, moreover, that several persons tended bar at the Hall. Hence, the dropping, misuse or abuse of the canister by others had not been removed as a possible cause. While plaintiff did introduce testimony that the canister worked well immediately before the accident and there was no direct physical evidence of damage while in use or any actual misuse, defendants' witness indicated the explosion might have been caused by someone abusing the canister with a heavy metal object or twisting it. Thus, plaintiffs did not adequately negate possible causes of the accident not attributable to any defect existing in the product while in the possession of Galler Seven-Up.

The trial judge did not charge the jury that the doctrine of *res ipsa loquitur* was applicable to this case despite plaintiffs' written request. Plaintiff made no objection to this failure to charge. Nevertheless, on appeal it is contended that plaintiff was entitled to a *res ipsa* charge and reversible error resulted from the lack of such a charge. The contention lacks merit.

The elements of *res ipsa loquitur* are well-settled. *Rose v. Port of New York Authority,* 61 *N. J.* 129, 136 (1972); *Lorenc v. Chemirad Corp.,* 37 *N. J.* 56, 70 (1962); *Hillas v. Westinghouse Electric Corp., supra.* This Court has noted

that "exclusive control * * * is of the essence of this rule of evidence." *Bornstein v. Metropolitan Bottling Co.,* 26 *N. J.* 263, 271 (1958).

Plaintiff need not exclude all other possible causes, *Krigsman v. Beach Concrete Co., Inc.,* 95 *N. J. Super.* 192, 195, *aff'd o. b.* 49 *N. J.* 340 (1967). He need only show that the likelihood of other causes is reduced so that it is more probable than not that the cause of the mishap was attributable to defendants' negligence. *Jakubowski v. Minnesota Mining and Manufacturing, supra* 42 *N. J.* at 183.

To iterate, the evidence in this case disclosed that the canister was on the premises of the Hall for an uncertain period of time. Additionally, the canister was operative at the bar for perhaps a week or two before the explosion and persons other than plaintiff tended bar during that period. Thus, any inference that the explosion resulted due to defendant Galler Seven-Up's negligence is countered by the inference that unknown parties tampered with, abused or misused the canister before the explosion. *Jakubowski v. Minnesota Mining and Manufacturing, supra; Dunn v. Hoffman Beverage Co.,* 126 *N. J. L.* 556 (E. & A. 1941) ; *Brooks v. Hill-Shaw Co.,* 117 *F.* 2d 682 (7 Cir. 1941) *cert.* den. 314 *U. S.* 610, 62 *S. Ct.* 61, 86 *L. Ed.* 490 (1941). We are unable to conclude therefore that error was committed by the trial judge in failing to charge *res ipsa loquitur,* let alone plain error. *Vespe v. DiMarco,* 43 *N. J.* 430, 439 (1964).

Affirmed.

*For affirmance* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER — 7.

*For reversal* — None.