JERILYN BROWN AND JACK BROWN, PLAINTIFFS-RESPON-DENTS, v. RACQUET CLUB OF BRICKTOWN, DEFENDANT-APPELLANT, AND KEN WILSON, T/A HANICORT, INC., AND/OR WILSON CONSTRUCTION, A. HARRY LANG, MOR-GAN DAVIS, A.I.A., DEFENDANTS.

MARGARET PISCAL AND FRANCIS P. PISCAL,
PLAINTIFFS-RESPONDENTS, v. RACQUET CLUB
OF BRICKTOWN, DEFENDANT-APPELLANT.

Argued September 26, 1983—Decided February 14, 1984.

*Stephen G. Sweet* argued the cause for appellant (*Methfessel & Werbel,* attorneys).

*Robert F. Novins* argued the cause for respondents Margaret Piscal, et al. (*Novins, Farley, Grossman & York,* attorneys; *James P. Brady* and *Lorna S. Scanlon,* on the briefs).

*Robert M. Adochio* argued the cause for respondents Jerilyn Brown, et al. (*Hendricks & Adochio,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

The Ocean Tennis Association, a non-profit group of tennis players, conducted a social function at premises consisting of a clubhouse building and adjacent tennis courts owned and operated by defendant, Racquet Club of Bricktown. The social event was a fashion show and buffet luncheon held on the second floor of the clubhouse building. Defendant's premises were made available for such functions in order to familiarize people with its facilities with the expectation that they would become patrons and generate future business.

The property had originally been owned by T. Harry Lang and Associates, who had begun construction of the facility in

1975. However, during construction, the company encountered financial difficulties. In May 1976 Stephen Leone, the president of one of Lang's creditors, Glen Rock Lumber Company, formed the defendant Racquet Club of Bricktown, which assumed ownership of the property upon executing on a judgment and thereafter operated the tennis club. Construction was completed and a certificate of occupancy was issued on July 30, 1976.

The fashion show and luncheon took place on April 17, 1977, eleven months after issuance of the certificate of occupancy. Plaintiffs Margaret Piscal and Jerilyn Brown, who were attending the show, were on an interior wood stairway leading from the entrance floor of the building to the second floor where the event was being held. Without warning, the stairs pulled away abruptly from the wall and the stairway collapsed. Both Piscal and Brown suffered injuries as a result of their fall, giving rise to the present suit against the Racquet Club of Bricktown.[1]

At trial, plaintiffs did not point to any specific act of negligence by defendant, but instead relied on the doctrine of *res ipsa loquitur*, maintaining that the facts of the accident raised an inference of negligence on the part of the defendant. The trial court instructed the jury that defendant as the building owner had a duty to provide a reasonably safe place for its patrons and charged *res ipsa loquitur*, explaining that the collapse of the stairway bespeaks negligence on the part of the defendant and it is up to the defendant to explain away that inference. Defendant's counsel objected to the charge because his client could be vicariously liable for the negligence of its predecessor in title who had constructed the building, despite the defendant's lack of notice of the defective stairs. The trial court also charged the jury that if the stairs constituted a hazardous condition, defendant would be responsible if it had failed to take reasonable measures to prevent the condition from arising or to

[1]Other parties sued as defendants, including the former owner, are no longer involved in the appeal.

discover and correct it, irrespective of the defendant's actual or constructive notice of the particular unsafe condition. Defendant also objected to this instruction.

The jury returned a verdict for plaintiffs. Defendant moved for a new trial or, alternatively, judgment notwithstanding verdict. The trial judge denied the motions and defendant appealed. The Appellate Division affirmed the verdict below, holding that the doctrine of *res ipsa loquitur* was available to plaintiffs and that the overall charge to the jury was fair. We granted defendant's petition for certification and requested supplemental briefs on the following question: "Should the doctrine of *res ipsa loquitur* apply in the circumstances of this case, where the present owner and occupier of the premises in question did not control the building at the time of its construction?"

I

In any case founded upon negligence, the proofs ultimately must establish that defendant breached a duty of reasonable care, which constituted a proximate cause of the plaintiff's injuries. *Hansen v. Eagle-Picher Lead Co.*, 8 N.J. 133, 139–40 (1951). *Res ipsa loquitur,* a Latin phrase meaning "the thing speaks for itself," is a rule that governs the availability and adequacy of evidence of negligence in special circumstances. The rule creates "an allowable inference of the defendant's want of due care" when the following conditions have been shown: "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality [causing the injury] was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." *Bornstein v. Metropolitan Bottling Co.*, 26 N.J. 263, 269 (1958).

The rule in effect creates a "permissive presumption" that a set of facts "furnish reasonable grounds for the inference that if due care had been exercised by the person having control

of the instrumentality causing the injury, the mishap would not have occurred." *Id.* While the doctrine allows only an inference of negligence, it can create a powerful influence in the minds of the jury, and, as a practical matter, "may very well shift the burden of persuasion." *Gould v. Winokur,* 98 *N.J.Super.* 554, 564 (Law Div.1968), aff'd 104 *N.J.Super.* 329 (App.Div.), certif. den. 53 *N.J.* 582 (1969). Once *res ipsa loquitur* is established, the case should go to the jury unless defendant's countervailing proof is "so strong as to admit of no reasonable doubt" as to the absence of negligence. *Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y.,* 22 *N.J.* 482, 493 (1956). In a case in which *res ipsa loquitur* applies, a directed verdict against the plaintiff can occur only if the defendant produces evidence "which will destroy any reasonable inference of negligence, or so completely contradict it that reasonable men could no longer accept it." *W. Prosser, Law of Torts,* § 40 at 233 (4th ed. 1971); *see also* 2 *F. Harper and F. James, The Law of Torts,* § 19.11 at 1099–1101 (1956).

■ The fall of a building or structure ordinarily raises an inference of negligence on the part of the party in control of the falling object. *See Law v. Morris,* 102 *N.J.L.* 650 (E. & A.1926); *Von Staveren v. F.W. Woolworth Co.,* 29 *N.J.Super.* 197 (App. Div.1954); *Galbraith v. Smith,* 120 *N.J.L.* 515 (Sup.Ct.1938); *Cleary v. Camden,* 118 *N.J.L.* 215, 219–20 (Sup.Ct.1937), aff'd o.b. 119 *N.J.L.* 387 (1938); *See also* 62 *Am.Jur.* 2 "Premises Liability," § 279 at 561 (1972). Such situations frequently present occasions for the application of *res ipsa loquitur.*

This case presents a number of facts that point strongly in favor of invoking the doctrine of *res ipsa loquitur.* The accident resulting in plaintiffs' injuries consisted of the collapse of stairs, which were under defendant's exclusive control at the time of their collapse. Moreover, the facts do not suggest that plaintiffs exhibited a want of due care that in any way caused or contributed to the accident. However, the critical question in determining the applicability of *res ipsa loquitur* in this case depends

on the scope of defendant's duty of care. "Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant." *W. Prosser, supra,* § 39 at 218. Justice Francis, concurring in *Bornstein,* made the pointed observation that the element of "exclusive control" in the defendant "relate[s] to the time of the indicated negligence * * * [and o]ur cases applying the principle of *res ipsa loquitur* generally speak in terms of control at the moment of accident." 26 *N.J.* at 275. He expressed agreement with Prosser's view:

"It would be far better, and much confusion would be avoided, if the idea of 'control' [as an essential element] were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it." [*Id.* at 276 (citing *W. Prosser, supra* § 39 at 221).]

These considerations require a directed focus on the duty of care that defendant owed plaintiffs and whether a breach of *that* duty is available inferentially to explain the happening of the accident. The accident must be one that inferrably arose because "the apparent cause of the accident lies within the scope of the defendant's obligation" and "the defendant has not exercised reasonable care" by failing to discharge that duty owed to the plaintiffs. *W. Prosser, supra,* § 39 at 226.

In this case the standard of care applied to defendant is shaped by its status as the proprietor of a commercial premises and its relationship to plaintiffs as invitees at the time of the accident. "The proprietor of premises to which the public is invited for business purposes of the proprietor owes a duty of reasonable care to those who enter the premises upon that invitation to provide a reasonably safe place to do that which is within the scope of the invitation." *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 275 (1982). This duty to maintain safe premises and protect invitees includes an affirmative obligation upon the proprietor to inspect the premises "to discover their actual condition and any latent defects," *Restatement (Second) of Torts* § 343 comment (b), at 216 (1966) as well as "possible dangerous conditions of which he does not know." *W. Prosser,*

*supra,* § 61 at 393. *See also* 2 *F. Harper and F. James, supra,* § 27.12 at 1487; 62 *Am.Jur.2d, supra,* § 65 at 312–13.

A proprietor generally is not liable for injuries caused by defects of which he had no actual or implied knowledge or notice, and no reasonable opportunity to discover. *W. Prosser, supra,* § 61 at 393. Whether a reasonable opportunity to discover a defect existed will depend on both the character and the duration of the defect. *Id.* Thus, proprietors have been absolved of liability where a defective condition was found not to be discoverable by reasonable inspection, *see Dombrowska v. Kresge-Newark, Inc.,* 75 *N.J.Super.* 271 (App.Div.1962), or where a latent defect, undiscoverable except by extraordinary investigation, caused an injury shortly after a new owner bought a building. *Francisco v. Miller,* 14 *N.J.Super.* 290, 297–99 (App. Div.1951).

Defendant recognizes that, confronted by a permissible inference of negligence on its part arising from the collapse of the stairway under its control, in order to avoid that inference, it had to explain through adequate proof that it was not negligent or that its negligence did not contribute to the accident. *See Rose v. Port Authority of New York,* 61 *N.J.* 129, 137 (1972); *Wollerman v. Grand Union Stores, Inc.,* 47 *N.J.* 426, 430 (1966). Defendant points to several factors to defeat the application of *res ipsa loquitur.* It stresses the fact that the faulty stairway was constructed by a third party. It also argues that the defective condition was latent and, further, that the defect was not discoverable upon a reasonable inspection. Therefore, defendant contends, the inference of negligence under *res ipsa loquitur* cannot stand as a matter of law.

Defendant in effect argues the existence of other possible causes of the accident which serve to exonerate it from any responsibility and defeat the application of *res ipsa loquitur.* However, a plaintiff need not exclude all other possible causes of an accident as a condition of entitlement to the doctrine, provided he can show that it is more probable than not that the

defendant's negligence was a proximate cause of the mishap. *See Lynch v. Galler Seven-Up Pre-Mix Corp.*, 74 *N.J.* 146, 154 (1977). As long as the facts permit a reasonable inference that defendant's control over the instrumentality under the circumstances was such that some act of negligence on its part was a contributing cause of the resulting accident, an explanation dissipating separate inferences of different acts of negligence by defendant or others does not defeat the application of *res ipsa loquitur.*

> The requirement as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was probably "such that the defendant would be responsible for any negligence connected with it." That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door. [2 Harper and James, *supra*, § 19.7 at 1086 (footnote omitted).]

In *Lustine-Nicholson Motor Co. v. Petzal*, 268 *F.*2d 893, 894 (D.C.Cir.1959) (citing *Loketch v. Capital Transit Co.*, 248 *F.*2d 609, 610 (D.C.Cir.1957)), *res ipsa loquitur* was ruled applicable where the defendant claimed that its explanation of other causes negated its negligence in the fall of a garage door.

> "Evidence bringing to light the circumstances of the accident does not, as appellee contends, make *res ipsa* inapplicable....The doctrine becomes inapplicable when the circumstances have been so completely elucidated that no inference of defendant's liability can reasonably be made."

In this case, the stairs were fastened to a single wall with plain nails. Defendant concedes that this installation was improper. Stephen Leone, the president of defendant, which acquired ownership of the premises in the course of construction, stated that had he built the stairs, he would not have used nails to fasten them to the wall. He contends that the former owner was responsible for the improper installation.

This evidence, however, does not negate a "rational ground for imputing the presumed negligence to such successor in control." *Bornstein, supra*, 26 *N.J.* at 271. The evidence may suffice to counter only one inference of negligence that might have otherwise been visited upon defendant, namely, negligence in the actual construction or installation of the stairs. The

possibility that some predecessor in control of the premises, a prior owner or independent contractor, may have caused the defect is not enough to destroy other inferences of negligence on defendant's part that may have contributed to the accident.

Defendant argues further that no inference of such other negligence on its part was permissible, because the defect, caused by a third party before defendant came into ownership and control of the premises, was latent and undiscoverable. However, *res ipsa loquitur* would still be applicable unless defendant's explanation of the accident conclusively negated any inference that defendant failed to discharge the duty of care it owed to its invited patrons, namely, to make a reasonable inspection that would have disclosed the existence of the defect.

On this point, the explanatory evidence as to the reasonableness of any inspection undertaken by defendant must be persuasive to prevent a case from going to the jury on the basis of *res ipsa loquitur.* If, for example, the defect is such that any reasonable inspection would have been unavailing to disclose its existence, then defendant's failure to make such an extraordinary inspection does not constitute negligence or permit an inference of negligence. *See, e.g., Dwyer v. Skyline Apts., Inc.,* 123 *N.J.Super.* 48 (App.Div.1973), aff'd o.b., 63 *N.J.* 577; *Dombrowska v. Kresge-Newark, Inc., supra,* 75 *N.J.Super.* at 271. However, where an inspection would be reasonable under the circumstances and it could have led to the discovery of the defect, an inference of negligence and proximate cause would be permissible in the absence of any convincing evidence that defendant undertook such an inspection. *See, e.g., Galbraith v. Smith, supra,* 120 *N.J.L.* 515; *Twardowski v. Westward Ho Motels, Inc.,* 86 *Nev.* 784, 787, 476 *P.2d* 946, 948 (1970); *Rose v. Melody Lane of Wilshire,* 39 *Cal.2d* 481, 247 *P.2d* 335 (1952).

The circumstances of this case would permit the jury to infer that the collapse of the stairway was caused at least in part by the defendant's failure to make a reasonable inspection that would reveal the existence of a defectively installed stairs.

An accident involving the collapse of a stairway attributable to its defective design or installation, even though originally constructed by a predecessor in ownership and possession, creates an allowable inference of negligence where the defendant has been in possession and control of the premises for a sufficient time to undertake an inspection of the stairs and a reasonable inspection would have led to the discovery of its faulty construction.

■ The jury could conclude from the evidence that defendant came into ownership and control of a recently constructed commercial property intending to invite members of the public to enjoy its facilities and use its interior stairway and that it occupied the premises for eleven months without undertaking to make a reasonable inspection of the stairs to ascertain the presence of any defective condition. These circumstances generated an allowable inference that the failures on the part of defendant contributed to the collapse of the stairs. Defendant's explanatory testimony does not destroy this inference of negligence. Thus, Leone testified that he failed to notice anything unusual about the stairs. He said the stairs "looked substantial" and that he "saw nothing" that indicated he "should go look at [the stairs] more thoroughly and check it out" to see how the stairs were fastened to the wall. However, he admitted that he had never really inspected to see how the stairs were fastened. The building inspector stated he never noticed anything unusual about the stairs and that he thought they were safe.[2] Leone also conceded that he never sought an engineering or structural inspection before or after assuming title. This testimony

[2]The building inspector testified that construction plans for the building indicated that the installation of the stairs was to be with plain nails. No argument was made at the trial, however, that because of the existence of these building plans, the defect was not latent. We express no opinion as to whether on a retrial plaintiffs can urge that the defect in the stairs was not a latent defect because of the specification in these plans and their availability to defendant, especially here where defendant assumed ownership while construction was still in progress.

equates simply with the proposition that the defect in the stairs may have been latent. It hardly suggests that a reasonable inspection calculated to uncover any defects was undertaken.

We are satisfied that under the circumstances an inference that some negligent act on the part of defendant contributed to the happening of the accident—the sudden collapse of an interior wooden stairway—and that this inference could be drawn from the accidental occurrence itself. Accordingly, the trial court properly instructed the jury to consider the issue of liability under the doctrine of *res ipsa loquitur*.

## II

Defendant claims that the trial court's instructions to the jury were misleading and inconsistent and did not provide the jury with proper guidelines for deciding this case. In support of this contention, defendant points to a series of statements by the judge, some of which were objected to at trial and some of which were raised for the first time on appeal. The Appellate Division found that the charge as a whole, though rambling, presented a coherent instruction to the jury. We agree with the Appellate Division that most of defendant's claims of reversible error in this charge are not meritorious. However, defendant further argues that the judge erred in instructing the jury that the stairs could be considered a "hazardous condition" and that this portion of the charge had no basis in the evidence.

The importance of the hazardous condition portion of the charge is that the jury was told that if they found that the stairs constituted a hazardous condition, then defendant would be liable regardless of whether it had actual or constructive notice of the fact that the stairs were dangerous. Further, no instruction was given providing any standard for determining whether a condition is "hazardous." Absent any appropriate standards, the trial court's instruction to the jury invited the jury to conclude that the stairs constituted a hazardous condition. The stairs suddenly collapsed and, in ordinary under-

standing and common experience, that strongly implies they were hazardous. The charge further permitted the jury to find that because the stairs were a hazardous condition, there is no requirement that defendant have either actual or constructive notice of the condition. In effect, the particular charge allowed the jury to find liability without determining that defendant had acted negligently in unreasonably failing to discover the existence of the defect.[3]

We cannot conclude, as did the Appellate Division, that in context the error was harmless. The dominant theory of liability upon which the case was tried and presented to the jury was founded on negligence and, on this premise, plaintiff successfully invoked the doctrine of *res ipsa loquitur.* Under the circumstances, this theory required a careful elucidation of the scope of defendant's duty of care owed to these particular plaintiffs. This requirement was particularly significant because defendant, as a business proprietor, was under an obligation to exercise reasonable care to provide a safe place to its invitees. Moreover, defendant was a successor in ownership and control of the premises and was not directly responsible for the defective design and installation of the structure. Consequently, the extraction of an allowable inference of negligence from the mere happening of the accident in this context, as permitted under *res ipsa loquitur,* became a close and carefully balanced question for the jury to resolve.

It is simply not possible to conclude with sufficient confidence that the jury's deliberations were not unduly influenced in the

---

[3]In a separate opinion, Justice Schreiber expresses the view that defendant as the owner and occupier of premises can be held liable for defects created by a predecessor in title and possession of the premises or by an independent contractor. However, such liability, according to Justice Schreiber, can arise from ordinary negligence on the part of the predecessor and is not dependent upon the defect constituting a hazardous condition. This theory of liability was not raised or presented by plaintiffs at trial or argued on appeal. We therefore do not express any views as to its validity or possible application in this case.

direction of liability by the additional instruction on the hazardous condition of the stairs, which served to eliminate any need to find notice of the defect on the part of defendant. Juxtaposed with the charge on *res ipsa loquitur,* the instruction based on the hazardous condition of the stairs clearly had the capacity to invite the jury to consider the defendant's duty of care in much stricter terms than would be applicable in the context of negligence and *res ipsa loquitur. See Freund v. Cellofilm Properties, Inc.,* 87 *N.J.* 229, 243–45 (1981) (where charge was not clearly applicable and may have affected jury's view of nature and extent of burden of proof shouldered by plaintiffs, use of such charge was not harmless error). Where alternative theories of liability arguably are available to a jury, we have been loathe to assume that it makes no difference in a jury's deliberations if an improper theory is presented to it. *See Kulas v. Public Service Elec. and Gas Co.,* 41 *N.J.* 311, 320 (1964) (if court is unable to determine whether jury predicated defendant's liability for negligence on an erroneous charge or on a properly submitted issue, there must be a new trial). The verdicts therefore must be reversed.

Accordingly, the judgment below is reversed and the matter remanded for a new trial.

SCHREIBER, J., concurring in part and dissenting in part.

I generally agree with the majority's analysis and discussion of the doctrine of *res ipsa loquitur.* However, I have difficulty with its analyses of the plaintiff's claim and the defense. The majority implicitly assumes that the defendant must prove that a reasonable inspection would not have uncovered the defect. The burden, however, is on the plaintiff to prove that the defendant violated its duty to make such an inspection and that that inspection would have revealed the dangerous condition. The plaintiff contended and the defendant conceded that the stairs were improperly installed. The plaintiff offered no proof that the defect would have been discoverable by the defendant upon a reasonable inspection. The defendant's uncontradicted

proofs were that the defective condition was latent and not discoverable upon a reasonable inspection.

The stairway led from the ground to the second floor. Constructed of wood, it was supported by a wall on one side and a banister on the other. There were approximately 10 steps. The backs of the steps were open, that is, there were no risers. The plaintiffs observed immediately after the collapse that the stairway had been affixed to the wall by tiny nails that protruded about one-half to one inch from the beam to which each step was attached. It was not possible to see from a visual inspection how the stairway was affixed to the wall.

The majority suggests that if the jury were to find that the defendant would not have discovered the defective installation by a reasonable inspection, 95 *N.J.* 293, then any inference of negligence under the doctrine of *res ipsa loquitur* would have been dissipated and a verdict would have to be entered in favor of the defendant. That result diminishes the duty that I believe is owed by a proprietor of business premises to those who enter upon the owner's invitation.

The "proprietor of premises, to which the public is invited for business purposes of the proprietor, owes a duty to exercise reasonable care to see that one who enters his premises upon that invitation has a reasonably safe place to do that which is within the scope of the invitation." *Brody v. Albert Lifson & Sons, Inc.*, 17 *N.J.* 383, 389 (1955); *see also Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 275–76 (1982); *Phillips v. Library Co.*, 55 *N.J.L.* 307 (E. & A. 1893).

That duty should extend to situations where the negligent act creating the dangerous condition was caused by the defendant's predecessor in title. The defendant has acquired the title and with it assumed the predecessor's responsibility to a third person for the dangerous condition.

Vicarious liability has been recognized in analogous situations. All would agree that if instead of a deed defendant had acquired ownership through acquisition of all the predecessor's outstand-

ing capital stock, liability for the negligently created condition would exist. *Cf. Globe Industrial Loan Corp. v. Steinberg,* 14 *N.J.Misc.* 541 (Sup.Ct.1936) (mere change of corporate name of a company does not prevent it from collecting on loans made under former corporate name). *See generally* 6 *Fletcher, Cyclopedia of the Law of Private Corporations* (rev. perm. ed. 1979), § 2456 at 217. No reason justifies treating a successor differently simply because of the form of the transaction.

Similarly, if the defendant had engaged an independent contractor to erect the building, the defendant could not escape responsibility to the plaintiff on the theory that the defect due to the contractor's negligence was not reasonably discoverable. The rule is stated in *Restatement (Second) of Torts,* § 422 at 405 (1965):

> A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside the land for physical harm caused to them by the unsafe condition of the structure
>
> > (a) while the possessor has retained possession of the land during the progress of the work, or
> >
> > (b) after he has resumed possession of the land upon its completion.

An illustration to section 422 states that the owner, once he resumes possession of the premises, is liable to a third party for harm caused by construction negligently done by an independent contractor. *Id.,* comment c, illustration 3. This view accords with traditional notions that an owner cannot escape liability by contracting away his duty to exercise reasonable care to provide premises reasonably safe for his invitees. *See Mayer v. Fairlawn Jewish Center,* 38 *N.J.* 549, 555 (1962). *But see Reisman v. Public Service Corp.,* 82 *N.J.L.* 464 (E. & A.1911); *Sebeck v. Plattdeutsche Volkfest Verein,* 64 *N.J.L.* 624 (E. & A.1900) (amusement park operators who arrange for independent contractors to give a fireworks display are not liable for negligence of contractors). The owner does not escape responsibility because it lacked control over the contractor or relied on the contractor's expertise. This liability exists irrespective of any

negligence on the part of the owner. The contractor's negligence is vicariously attributable to the owner. Although I would not limit liability to this situation, it may be noted that the defendant here acquired ownership during the construction and completed the building. It was mere happenstance that the stairway had been finished—it had been built by a subcontractor of the prior owner, T. Harry Lang and Associates—when the defendant acquired title and finished the construction. Therefore, it would not be unreasonable to place the defendant in the status of the owner during the entire construction.

Finally, the situation at bar is somewhat analogous to the strict tort liability of a successor corporation for damages caused by latent defects in products manufactured and distributed by its predecessor. *See Ramirez v. Amsted Industries, Inc.*, 86 *N.J.* 332 (1981). In the product liability case the successor entity that never had control over the defective product is nevertheless responsible. Here, in contrast, the current owner of the real property has control over the premises and has a direct relationship to the plaintiff who has encountered the hazardous condition upon accepting the owner's invitation to enter the premises. If policy justifies liability in the product field, why is not the business invitee entitled to at least similar protection? I envision no justification for the difference. *Cf.* Ursin, "Strict Liability for Defective Business Premises—One Step Beyond *Rowland* and *Greenman*," 22 *U.C.L.A.L.Rev.* 820, 827–28 (1975) (advocating that a strict liability duty to patrons should be applied to the owners of business premises).

A successor owner should stand in the shoes of its predecessor with respect to the owner's duty of exercising reasonable care to furnish a reasonably safe place to the business invitee. Once the successor takes control of the premises, it should be liable to its business invitees not only for its own failure to exercise reasonable care to make the premises reasonably safe, but also for its predecessor's negligence that caused the premises not to be reasonably safe for the present owner's business invitees.

The defendant places substantial reliance for its position upon *Dwyer v. Skyline Apartments, Inc.*, 123 *N.J.Super.* 48 (App.Div.), aff'd o.b., 63 *N.J.* 577 (1973). There the plaintiff, a tenant for 15 years in a multi-family garden apartment, sued the landlord for injuries when a hot water faucet in the apartment broke. Judgment for the plaintiff was reversed by the Appellate Division since the landlord had no actual or constructive notice of the condition. *Id.* at 52. The case is inapposite. The landlord did not create or maintain the dangerous condition. Neither it nor its predecessor in title had any control over the faucet at the time of the accident or when the faucet became defective. Interestingly, the *Dwyer* court, citing *Marini v. Ireland*, 56 *N.J.* 130 (1970), did observe that a landlord is held to an implied covenant of habitability against *latent* defects, including those caused by faulty original construction, that presumably would not have been apparent upon reasonable inspection. 123 *N.J.Super.* at 53.

The defendant's proposition that a property owner can be held liable only for a condition of which he has actual or constructive notice may be true in other contexts. This is generally true where the negligent conduct causing the condition is that of a third person unrelated to the defendant. *See Thompson v. Giant Tiger Corp.*, 118 *N.J.L.* 10, 13 (E. & A.1937). Notice is not a factor when the defendant property owner, its servant, agent or employee creates the hazardous condition. *See Bozza v. Vornado, Inc.*, 42 *N.J.* 355, 360 (1964).

In advancing the proposition that a successor owner should be responsible to its business invitees for a hazardous structural condition created by a predecessor, I would disapprove of those cases, *e.g., Dombrowska v. Kresge-Newark, Inc.*, 75 *N.J.Super.* 271 (App.Div.1962); *Francisco v. Miller*, 14 *N.J.Super.* 290, 296–97 (App.Div.1951) (none of which are decisions of this Court or the Court of Errors and Appeals), that hold the owner and possessor is not under a duty to render premises reasonably safe to its invitees when the hazardous structural condition is latent, unknown, and not reasonably discoverable upon inspection. As

between the business proprietor and the innocent invited patron injured as a result of a dangerous structural condition on the premises, equities favor imposing the costs attributable to the injury on the owner. The owner is in a position to correct defective conditions and to spread these costs through a liability insurance policy and in the pricing of its goods or services. Furthermore, the owner in most situations may bargain in the purchase contract to shift this monetary responsibility to its predecessor in title, which may, as in the instant case, have been the actual wrongdoer.

Though the plaintiff did not raise this precise theory of liability on appeal, it is an inherent and essential element of the cause. In all probability, it will be a question with which the trial court will be faced on the retrial. Accordingly, I submit the answer should be given now (after giving the parties an opportunity to submit supplemental briefs), so that the litigation will be finally concluded and the possible delay and costs of a second appeal obviated.

Justice O'HERN joins in this opinion.

CLIFFORD, J., dissenting.

This is the kind of case that could give *res ipsa loquitur* a bad name.

Plaintiffs Jerilyn Brown and Margaret Piscal were injured by the collapse of a stairway on premises of defendant Racquet Club of Bricktown. They charged that this defendant "carelessly and negligently permitted to exist on [its] property improper maintenance and repair or unsafe stairs * * * " (Brown), and "failed to exercise reasonable care [thus causing] a dangerous and hazardous condition * * * to occur, causing plaintiff to sustain a fall" (Piscal).

In support of these allegations plaintiff introduced no evidence of any specific acts of negligence, but instead relied on *res ipsa loquitur.* The trial court charged the jury on that doctrine. Because of my view that the state of the evidence at the close of

the case did not warrant submission of *res ipsa* to the jury, I record a different position from those reflected in the other opinions.

It is clear, as Justice Schreiber observes, *ante* at 298, that the cause of the stairs' collapse was the builder's concededly improper method of attaching them to a single wall by the use of "tiny nails that protruded about one-half to one inch from the beam to which each step was attached." *Id.* No reasonable inspection would have disclosed the latent condition of how the stairs were joined to the wall. *Id.* In order to see the method of attachment, one would presumably have had to remove the fascia board covering the nails, not otherwise visible to the naked eye. To the extent that dismantling of the structure is necessary to satisfy the requirement of a reasonable inspection, the requirement imposes an unrealistic standard—at least where, as here, there is no knowledge or forewarning of any flaw to excite a healthy curiosity about a problem (swaying, vibration, that sort of thing). *See Dombrowska v. Kresge-Newark, Inc.* 75 *N.J.Super.* 271 (App.Div.1962); *Francisco v. Miller,* 14 *N.J.Super.* 290 (App.Div.1951).[1]

Plaintiffs did not suggest any cause for the collapse other than the one that became painfully obvious *after* the event—the use of short nails rather than screws or bolts or some sturdier, more reliable device. In the rubble of the tragic event lay the solution to the mystery.

In the circumstances the Court holds that plaintiffs were entitled to have the jury give them the benefit of *res ipsa*'s inference of negligence. I think not. Although I agree with the proposition that proof of other possible causes of the accident does not foreclose reliance on *res ipsa*, I nevertheless

[1]Like the majority I deal with the case as it comes to us and on the theories advanced, and take no position on the approach advanced by Justice Schreiber. See the opinion of the Court, *ante* at 296 n. 3.

conclude that on the facts before us the predicate for application of the doctrine to this defendant occupier is missing.

The Court accurately sets forth the ingredients of a *res ipsa* case, *ante* at 288–89, as set forth in *Bornstein v. Metropolitan Bottling Co.,* 26 *N.J.* 263 (1958): "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect." *Id.* at 269. The last of these circumstances is clearly present in this record, the first conditionally so, the second not at all.

As to the requirement that "the occurrence ordinarily bespeaks negligence," surely staircases do not ordinarily collapse absent negligence on *somebody's* part. The question is: whose negligence and "what kind" of negligence are contemplated? I do not understand common experience to tell us that stairways in commercial premises do not ordinarily collapse without negligence of some kind on the part of the occupier where, as here, failure to conduct a reasonable inspection has been put beyond any doubt. In this case plaintiff could well resort to the doctrine as against the builder; but I would not allow *res ipsa* to be considered by the jury against one in the position of this defendant, particularly when there is no suggestion of what legal duty it is that the occupier failed to fulfill.

Moreover, as concerns the second requirement of *res ipsa* —that the instrumentality be within the defendant's exclusive control—the rule makes sense only if it refers to control at the time the negligence sought to be implied actually occurred. That may or may not coincide with control at the time of the accident. Justice Francis drew the distinction in his concurring opinion in *Bornstein, supra,* 26 *N.J.* 263, an exploding bottle case in which plaintiff sought to gain the benefit of *res ipsa* against the bottler even though control of the offending instrumentality had passed from the bottler to a storekeeper, plaintiff's employer, at the time of the accident:

I take the reference to exclusive control to relate to the time of the indicated negligence and not to the time of the plaintiff's injury, because obviously when the explosion occurred the bottle had long since passed out of the defendant's control. Our cases applying the principle of *res ipsa loquitur* generally speak in terms of control at the moment of accident. [*Id.* at 275.]

So here, the principle might be given to a jury considering the liability of the builder, who was in control at the time the offending condition came into being and who caused its concealment. It should not have been available against the defendant occupier.

Finally, I share Justice Schreiber's apprehension, *ante* at 298, that the Court has shifted to defendant the obligation to demonstrate that a reasonable inspection would not have uncovered the defect. The burden is plaintiff's to prove the affirmative of the stated proposition. There can be no question that plaintiff's proof failed in that regard as a matter of law.

This opinion should not be taken as evidencing any disrespect for *res ipsa.* Properly applied, this time-honored doctrine is deserving of the deference it has well earned. It surely merits better treatment than being hauled off the back of the shelf, dusted off, and used just to plug up the leaks in a plaintiff's case as porous as this one was on the theory on which it was presented (see *supra* at 287 n. 1).

Because there was insufficient evidence to take the issue of defendant's negligence to the jury, either on the basis of *res ipsa* or the basis of a reasonable inspection of the premises, I would reverse the judgment of the Appellate Division and order the entry of judgment for defendant.

Justice POLLOCK authorizes me to record his joinder in this dissenting opinion.

SCHREIBER and O'HERN, JJ., concurring in the result.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SCHREIBER, HANDLER, O'HERN and GARIBALDI —5.

*For reversal*—Justices CLIFFORD and POLLOCK—2.