**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3613-19

Estate of MARCIA
LILLIANTHAL by the
executor MINDI ANN
COHEN,

     Plaintiff-Appellant,

v.

DUNKIN DONUTS
BASKIN-ROBBINS,
DUNKIN' DONUTS c/o QSR,
DUNKIN' BRANDS
GROUP, INC., BUCKELEW
AT JAMESBURG, LLC d/b/a
DUNKIN' DONUTS,
QSR MANAGEMENT,
ALLIANCE MANAGEMENT,
LLC, and 200 BUCKELEW, LLC,

     Defendants-Respondents.

_____

Argued October 12, 2021 – Decided November 3, 2021

Before Judges Sabatino and Mayer.

On appeal from the Superior Court of New Jersey, Law
Division, Middlesex County, Docket No. L-7427-17.

Cecilia W. Blau argued the cause for appellant (Law Office of Cecilia W. Blau and Rosen Law, LLC, attorneys; Cecilia W. Blau and Gary Rosen, on the briefs).

Robert R. Mathias argued the cause for respondents (Barry McTiernan & Wedinger, LLC, attorneys; Laurel Wedinger, on the brief).

PER CURIAM

Plaintiff Estate of Marcia Lillianthal by the Executor Mindi Ann Cohen[1] appeals from an April 1, 2020 order granting summary judgment to defendants Dunkin' Donuts c/o QSR, Buckelew at Jamesburg LLC d/b/a Dunkin' Donuts, QSR Management, Alliance Management, LLC, and 200 Buckelew, LLC (collectively, Dunkin) and dismissing plaintiff's personal injury complaint with prejudice. We affirm because there is no legal basis to impose liability even viewing the facts in the light most favorable to plaintiff.

Marcia Lillianthal (Lillianthal) fell inside a Dunkin located in Jamesburg, purportedly as a result of a green, sticky substance and errant napkin. She claimed Dunkin breach its duty of care by failing to remediate a dangerous condition. Through discovery, which included depositions of Lillianthal and her

---

[1] During the pendency of the lawsuit, Lillianthal died from causes unrelated to her fall in Dunkin.

daughter, Mindi Ann Cohen, the following facts were presented to the judge as part of Dunkin's motion for summary judgment.

Lillianthal entered Dunkin with Cohen. While standing at the service counter, Lillianthal saw a donation card and asked her daughter for a quarter. Lillianthal took a step or two away from the service counter to place the coin in the donation card. According to Lillianthal, her left foot stuck to the floor and impeded her momentum. She then stepped back with her right foot and contended she landed on a napkin, causing her to fall. Lillianthal also claimed there was a green spill of approximately five to eight inches where she fell.

Lillianthal did not see a napkin on the floor. She became aware of the napkin only after her daughter mentioned it.[2] A Dunkin employee called the police.

Cohen's deposition testimony was consistent with her mother's testimony. After Cohen gave her mother a coin, she heard a "scuffle" and turned to see her mother fall. Cohen purportedly noticed a stray napkin on the floor. Another

---

[2] During discovery, Dunkin produced a seventy-seven second video of Lillianthal's fall. We have reviewed the video footage as part of the record on appeal.

customer reportedly told Cohen the napkin caused Lillianthal's fall.[3] Cohen testified the napkin was roughly four to five inches from Lillianthal's foot. Cohen did not see a sticky substance on the floor before or after her mother's fall.

Several Dunkin employees gave deposition testimony. Carolyn Namio, Dunkin's cashier on the day Lillianthal fell, explained the store manager decided daily cleaning and maintenance duties. If no manager was present, the employees would "take it upon [themselves] if [they] saw something out of place or that needed to be done . . . ." Namio testified "the dining room was cleaned and mopped at least once a day during [Namio's] shift."

According to Namio, Dunkin customers ordered at the service counter and were then directed to a counter on the other side of the store where napkins and supplies were located. Namio did not recall Dunkin selling any green beverages on the date of Lillianthal's fall.

After seeing Lillianthal fall, Namio left the service counter to render assistance. When Namio asked if Lillianthal was okay, Lillianthal replied she

---

[3] The video of Lillianthal's fall depicted an unnamed man wearing a red jacket. According to Cohen, this individual pointed to a napkin when the police arrived. However, the individual did not give a statement to the police and was never identified.

A-3613-19

"fell over her foot." After the fall, Namio checked the floor and did not see any napkins or substances. No other customers had fallen during the time Namio worked at Dunkin.

Achala Wadigamangawa, a district manager for another Dunkin location, provided general testimony regarding operations at Dunkin locations. She testified the manager or shift leader of the particular Dunkin location is required to inspect the floor every fifteen to twenty minutes to determine if maintenance is required. Dunkin employees are instructed to clean up if they see something awry. In the event of an accident, Dunkin employees are trained to tend to the customer first and call an ambulance if necessary.

Additionally, Wadigamangawa explained each Dunkin has security cameras, which are checked after an incident. Wadigamangawa could not recall how long video footage is retained by Dunkin for customers suffering serious injuries. She testified video footage usually includes a couple of minutes before the incident, the entirety of the incident, and a few minutes after the incident.

Two other Dunkin corporate employees provided deposition testimony regarding Dunkin's corporate policies. One corporate employee confirmed Dunkin's maintenance policy required an inspection of the store every fifteen to twenty minutes. If an employee noticed something on the floor, the employee

was required to clean it immediately. Dunkin's chief financial officer testified no other slip and fall incidents occurred in location where Lillianthal fell.

In addition to the deposition testimony, video footage from Dunkin's security camera was submitted to the motion judge for review as part of a summary judgment record. The video shows Lillianthal standing at the Dunkin service counter before she takes a step and falls. No green substance or napkin are visible in the video.

Both parties submitted expert reports for the judge's consideration in deciding Dunkin's summary judgment motion. Dunkin's expert concluded Dunkin complied with safety regulations and Lillianthal's fall "was not attributable to any impropriety or shortcoming on the part of Dunkin[.]" Plaintiff's expert concluded Lillianthal's fall was attributable to a lack of friction on the floor's surface, which would have been exacerbated by a liquid substance or napkin on the floor.[4]

In a written statement of reasons attached to the April 1, 2020 order, the judge granted Dunkin's summary judgment motion and dismissed plaintiff's complaint with prejudice. According all inferences in favor of plaintiff, the

---

[4] Because the judge decided Dunkin's summary judgment as a matter of law, he did not rely on the submitted expert reports.

A-3613-19

judge presumed both a napkin and a tacky green substance were present on the floor and "the combination of the two caused [Lillianthal]'s fall." However, the judge found there was no liability because Dunkin lacked actual or constructive notice of a dangerous condition. In addition, the judge deemed the mode of operation doctrine inapplicable to Dunkin's business model.

On the lack of actual notice, the judge explained:

> [t]here is no proof that [Dunkin] or any employee had actual notice of either the wet green tacky substance or the napkin. No eyewitness corroborated the presence of either condition. Plaintiff testified that no [Dunkin] employee came out to clean the floor in the area where she fell and [Lillianthal] herself indicated that she did not see any liquid on the floor prior to her encounter with it.

The judge also noted there were no pictures showing a napkin on the floor after Lillianthal fell. Nor did Lillianthal tell anyone she slipped on a napkin. To the contrary, Lillianthal told a Dunkin employee she fell over her own foot.

On the lack of constructive notice, the judge found plaintiff proffered no evidence of either a green tacky substance or napkin on the floor. He explained, "[t]here is no evidence put forth that gives any indication what the green tacky substance was, where it came from or how long it had been there. Similarly, there is no evidence concerning the napkin and how long it had been there or how it got to the floor near the service counter."

7

Regarding the green tacky substance, the judge explained "[t]he substance [was] not related to any self-service component of the [Dunkin]." Further, the judge held "[a]ny such spill would still require proof of actual or constructive knowledge on the part of a defendant."

Similarly, the judge rejected plaintiff's argument the mode of operation exception applied to Dunkin. Although Dunkin customers take napkins from a dispenser, the judge determined such an arrangement was not "the type of self-service business contemplated in the mode-of-operation cases . . . ." The judge found the location of napkin dispensers at Dunkin's entrance, opposite the service counter, was "not uncommon in any fast[-]food type operation."

On appeal, plaintiff argues the motion judge erred in granting summary judgment because the judge's analysis was flawed, particularly regarding his mode of operation analysis. She also contends there were genuine issues of material fact precluding summary judgment, pointing to Dunkin's failure to comply with its own cleaning and inspecting protocols and Dunkin's having notice of the dangerous condition presented by its floor. We reject plaintiff's arguments.

Our review of a summary judgment motion is de novo, applying the same standard as the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J.

8

459, 472 (2018). A court should consider whether "the competent evidential materials submitted by the parties," when viewed in the light most favorable to the non-moving party, show there are no "genuine issues of material fact" and "the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014); R. 4:46-2(c). We accord no deference to a motion judge's legal conclusions. RSI Bank, 234 N.J. at 472.

To sustain a negligence claim, a plaintiff must demonstrate: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) injury. Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citing Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008)). Because this is a premises liability case, Dunkin owed plaintiff "a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003) (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993)). "The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." Ibid. (citing O'Shea v. K. Mart Corp., 304 N.J. 489, 492-93 (App. Div. 1997)). To prove a breach of the duty in a premises liability case, a plaintiff must show the defendant had actual or constructive knowledge of the dangerous condition that

A-3613-19

caused the accident. Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291 (1984).

However, if the mode of operation doctrine applies, as traditionally invoked in a self-service business setting, a plaintiff need not establish notice. Nisivoccia, 175 N.J. at 564-65. The mode of operation "rule is a very limited exception to the traditional rules of business premises liability affording the plaintiff an inference of negligence where the proprietor of a business could reasonably anticipate that hazardous conditions would regularly arise simply from the operator's method or manner of doing business." Carroll v. New Jersey Transit, 366 N.J. Super. 380, 389 (App. Div. 2004) (citing Nisivoccia, 175 N.J. at 559).

To invoke the doctrine, a plaintiff must prove that the dangerous condition arose from the business's self-service operation. Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 260 (2015) (citing Nisivoccia, 175 N.J. at 563-66). "The dispositive factor is . . . whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." Id. at 262. The doctrine will not apply where there is no evidence "the location in which [the] plaintiff's accident occurred . . . bears the

slightest relationship to any self-service component of [the] defendant's business." Id. at 264.

In determining whether the mode of operation doctrine is applicable, courts must examine "the self-service nature of the defendant's business." Prioleau, 223 N.J. at 260 (citing Nisivoccia, 175 N.J. at 563-66).  The mode of operation rule "has never been expanded beyond the self-service setting, in which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk" and "is not a general rule of premises liability . . . ." Id. at 262.  While the injury must occur in an area affected by the self-service operation, liability may be based upon "the negligence of employees" or "the carelessness of patrons" who cause the dangerous condition. Id. at 260-62.

We are satisfied the motion judge correctly held the mode of operation rule did not apply in this case.  While napkins are obtained by Dunkin customers in a self-service manner, there is no corroborating evidence on the video or otherwise that Lillianthal's fall was caused by a napkin.  Plaintiff's lack of proof as to a self-service component in the Dunkin store defeats her ability to invoke the mode of operation exception to impose liability.

11

We next consider whether plaintiff satisfied her burden of proof under traditional negligence principles. Plaintiff contends Dunkin had a duty to periodically inspect and clean the floor and to install a mat in front of the service counter.[5] She claims Dunkin was negligent in failing to perform those duties. She further asserts the floor lacked sufficient surface friction, creating a slippery condition even absent a spill or other debris on the floor. We reject these arguments because plaintiff was required to establish Dunkin had notice of a dangerous condition and she failed to do so.

When establishing a claim for premises liability, a plaintiff must show the defendant had actual or constructive notice of the dangerous condition. Nisivoccia, 175 N.J. at 563. Because plaintiff did not claim Dunkin had actual notice of a dangerous condition, we consider whether Dunkin had constructive notice of such a condition.

A defendant has constructive knowledge "when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting

---

[5] Plainitff's contention regarding the lack of a floor mat was first raised during appellate argument. We decline to consider issues raised for the first time on appeal. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App Div. 1957)). "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)).

The motion judge correctly concluded Dunkin was not liable to plaintiff because it lacked notice of a dangerous condition. Giving plaintiff every favorable inference and presuming the presence of a green substance and napkin on Dunkin's floor, the record is devoid of any evidence establishing where the substance and napkin came from or how long either had been present prior to Lillianthal's fall. There were no pictures or video footage of the substance or napkin. Nor did the eyewitness provide a statement or certification regarding the presence of a substance or napkin on the floor.

Additionally, the judge properly rejected plaintiff's argument Dunkin was on notice because it had policies requiring the cleaning and inspecting of the store every fifteen to twenty minutes and failed to do so. Plaintiff provided no support for her claim Dunkin failed to adhere to its own policies and therefore breached a duty to her. Further, plaintiff offered no evidence regarding the improper surface friction of the floor tiles in the absence of any other slip and

falls at this Dunkin location. Given the lack of proof presented in support of plaintiff's negligence claims, the absence of evidence of "actual or constructive notice . . . is fatal to plaintiff's claims of premises liability." Arroyo, 443 N.J. Super. at 243.

To the extent we have not addressed plaintiff's remaining arguments, we consider those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3613-19