**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3562-19

KAREN ALLEN and
JAMES ALLEN,

      Plaintiffs-Appellants,

v.

FAMILY MEDICAL
EQUIPMENT,

      Defendant-Respondent,

and

MEDICAL DEPOT
INCORPORATED,

      Defendant.

_____

Argued October 4, 2021 – Decided November 10, 2021

Before Judges Sabatino, Rothstadt, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0552-17.

Matthew Weng argued the cause for appellant (Chance & McCann, LLC, attorneys; Matthew Weng, on the briefs).

Dennis M. Marconi argued the cause for respondent (Barnaba & Marconi, LLP, attorneys; Dennis Marconi, on the brief).

PER CURIAM

In this personal injury action, plaintiffs Karen and James Allen appeal from an April 24, 2020 order awarding defendant Family Medical Equipment summary judgment and dismissing plaintiffs' complaint. The complaint sought damages for injuries Karen[1] sustained in a fall that occurred as she attempted to stand up from a raised toilet seat with arm rests, which she used immediately after defendant's employee delivered and installed at plaintiffs' home.[2] In their complaint, plaintiffs alleged defendant was "negligent in [its] choice, instruction for use given to plaintiffs, or installation of the raised toilet seat." In opposition to a summary judgment motion filed by defendant, plaintiffs did not support

---

[1] Plaintiffs are married. We refer to them individually by their first names to avoid any confusion caused by their common last name.

[2] The product was manufactured by defendant Medical Depot. The summary judgment orders entered in this case also dismissed plaintiffs' defective product claim against Medical Depot. However, after plaintiffs filed their appeal from both orders, plaintiffs and Medical Depot filed a Stipulation of Dismissal with prejudice on December 17, 2020, as to plaintiffs' claims against Medical Depot.

their claim with any expert opinions or other direct evidence of defendant's negligence, but instead relied upon the doctrine of res ipsa loquitur.[3] The motion judge disagreed with plaintiffs that the doctrine applied and entered the order dismissing their complaint.

We affirm, as we conclude from our de novo review of her order, the motion judge correctly determined res ipsa loquitur did not apply to plaintiffs' claims, but we reach this conclusion for a slightly different reason.

The material facts viewed in the light most favorable to plaintiffs are not generally in dispute and are summarized as follows. Prior to her fall, in July 2015, Karen suffered a stroke that led to her hospitalization and admission to a rehabilitation facility. As a result of her stroke, she was "weak on the left side" and could not stand up from a seated position without the assistance of her husband or a cane. As part of her discharge, the rehabilitation facility issued an order for Karen to have a raised toilet seat installed at her home.

Shortly after her release, Karen returned home and ordered the raised toilet seat from defendant. The item was delivered to plaintiffs' house on August 5, 2015, by one of defendant's employees, who installed the product in plaintiffs'

---

[3] As discussed in more detail infra, the doctrine permits proof of negligence by inference under limited circumstances.

bathroom while they observed his actions. According to Karen, the employee brought the box containing the raised toilet seat to the bathroom and "screwed [the toilet seat] down" "against the toilet," which took five minutes to complete. The employee did not speak to plaintiffs, he never showed plaintiffs how to sit on the raised toilet seat, and he did not ask either plaintiff to attempt to sit on the product before he left the house, and plaintiffs did not request that he observe either of them sitting down and standing up from it before he departed.

The employee did have James sign a delivery ticket, acknowledging delivery and that plaintiffs' received written instructions about the product's use.[4] The document included an acknowledgment that

> [a]ll Manufacturer environmental and <u>safety checks have been performed per Company Policy prior to delivery and reviewed with the patient upon delivery</u> including[:] <u>Safe use of the equipment</u> in your home setting. All risk of potential harm from use of the above equipment have been reviewed and safe storage and maintenance requirements including cleaning and regular safety checks have been reviewed with me. <u>Written instructions and Warranty information have been given to me reinforcing this content</u>.
>
> [(Emphasis added).]

---

[4] The document appears in the record to bear James' signature, but at her deposition, Karen stated she signed the document.

A-3562-19

Instructions about the product's installation and use were typically located in the product's box, which the employee left at plaintiffs' home. The instructions indicated, among other things, that the "[u]ser's weight should be centered over toilet seat, not too far forward or too far to one side, as unit may tip." Additionally, the instruction manual included a "CAUTION" section with the following warnings:

1. Always be sure that the seat is correctly and securely locked in place before using.
2. Be sure that the adjustment knob in front of the seat is tight at all times, thus securing the seat to the toilet bowl.
3. . . . [B]e sure that the unit is correctly installed, fits properly and is stable before use.
4. On models with arm rests: The arms are for the purpose of providing assistance when getting on and off the seat. DO NOT try to use the arms to support full body weight during transfer, as this may result in failure of the unit.

[(Emphasis added).]

Although Karen stated she read the signed acknowledgement confirming receipt of the instructions, she never read any instructions about how to attach or use the raised toilet seat, and she did not speak with anyone about them.

According to plaintiffs, when the employee left, the raised toilet seat seemed to be tight on the toilet and sturdy. James confirmed he saw defendant's employee tightened the knob on the raised toilet seat and then "checked" the

5

toilet seat by putting his hands on the handles and "rock[ing] it a little bit" to "see if it was tight." According to James, the seat "seemed to be" tight after he witnessed this check by the employee. Plaintiffs did not test the raised toilet seat before Karen used it for the first time after the employee left. When she did, she fell off it and sustained injuries.

Karen described how she used the toilet seat as having "[g]rabbed the side – each of the rails, went to stand up. When I went to stand up, the thing went off the toilet and I went on the floor with it." She also described the incident as occurring after she "sat down. When I got ready to get up, the whole thing come off, and me and that went on the floor." According to Karen, her husband assisted her when she first sat down, but she did not call him for help when she was ready to stand up. She noted that when she sat down, she did not feel the raised toilet seat move, she did not hear anything crack, and, while she was seated, "[i]t felt sturdy." She also noted the raised toilet seat was still connected to her buttocks after she had fallen to the floor and hit her left hip and leg. After she fell, Karen called for her husband, who assisted her and drove her to the emergency room.

Bart Price is defendant's president. According to Price, defendant is a "[d]urable medical equipment" company, meaning their products are

6

"equipment that is put in the home and hospitals, that type of thing." He explained that defendant's drivers deliver equipment and ordinarily it is just dropped off, except for hospital beds and oxygen equipment, which would routinely be set up by the driver upon delivery. He stated a raised toilet seat is "not typically" installed by defendant's drivers, and its installation does not require any special training.

Plaintiffs filed their complaint in 2017. In March 2020, after discovery was completed, defendant filed its motion for summary judgment. Oral argument was held on the motion on April 24, 2020. At the conclusion of oral argument, the motion judge granted defendant's motion and entered the order dismissing plaintiffs' complaint with prejudice, placing her reasons on the record that day.

In granting the motion, the judge observed plaintiffs were "attempting to prove this case on the theory that [Karen] fell and was injured using the product; therefore, defendant must have been negligent and that is not a basis. It's not sufficient proof to go forward on a negligence claim." The judge then made factual findings, primarily based upon plaintiffs' deposition testimony. The judge noted that neither plaintiff testified about the installation being improper or that the seat was not sturdy after it was installed.

The judge then outlined the standard for negligence. Regarding the elements of duty, she concluded there was no issue as to defendant having a duty to properly install the seat. As to breach of that duty, she found that plaintiffs relied only upon the fact that Karen fell, and they did not offer any "<u>criticism of the observed installation, [and] there's no evidence that the device was not sturdy and in place properly before plaintiff used it.</u>" (Emphasis added).

The judge turned to plaintiffs' res ipsa loquitur argument and held it did not apply. Relying on the Court's opinion in <u>Buckelew v. Grossbard</u>, 87 N.J. 512 (1981), the judge reviewed the elements of res ipsa loquitur and concluded as follows:

> When I go through those elements of res ipsa, I find that [plaintiff] has not established that the inference can be instructed to the jury in this case or applied to the [c]ourt's consideration of this motion.
>
> The first prong is the occurrence itself bespeaks negligence. <u>I don't see that the plaintiff has met the burden of showing that just because plaintiff fell, that ordinarily must mean that the installation of the product was negligent</u> or it could be various other reasons for the plaintiff's fall. <u>For example she was a stroke patient who was just recently admitted home and could have had difficulty with resolving her medical condition</u>. I am cognizant of the fact that I have to give, I have to consider the facts in the light most favorable to the plaintiff, but when I consider this prong, I can't find that just because a plaintiff fell the first time using a raised toilet seat taking into consideration the manner that she

8

described she fell, I can't find that there must have been some negligence involved in that considering all of the other facts in this case and it fails for that reason.

But more, <u>I think a stronger argument is prong two</u> that the [c]ourt would have to find that the toilet seat was in the defendant's exclusive control. It was not in the control of this defendant at the time that the injury occurred. Plaintiff did make argument that, oh, and some case law was cited, cases that have found where the product was not in the exclusive control of the defense at the time and res ipsa was still applied. <u>The exclusive control prong does not require that a plaintiff exclude all other possible causes of an accident but only that it is more probable than not that defendant's negligence was a proximate cause of the mishap.</u> That comes from [<u>Luciano v. Port Authority Trans-Hudson Corp.</u>, 306 N.J. Super. 310 (App. Div. 1997)].

The question is whether the facts permit a reasonable inference that the defendant's control over the toilet seat was such that it would be responsible for any negligence connected with it. I understand the argument to be that because the accident occurred so quickly after the device was installed that the defendant should be deemed to still be in exclusive control over it. I just don't see that that's supported by the case law. Now, here there's no question that if it was installed by [defendant's] employee, <u>it was installed and then the employee left the residence and some period of time passed and the defendant was clearly not in control</u>. There's no allegation that the defendant was in control of the device at the time that the accident occurred.

The third prong also fails I find. The third prong would require the [c]ourt to find that there is no indication that the circumstances of the injury -- there's

no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect.

Again, <u>there are facts that this was an individual who had some medical concerns</u>. She attempted to conduct from the toilet on her own. I'm not going to speculate about the cause of her fall. I don't think it would be appropriate for me to and <u>I won't find that she fell because she had a medical condition</u>. What the question is <u>is there enough evidence for the plaintiff to prove that she fell because of the installation, the negligent installation of the product and where there are other reasonable explanations for the fall and in absence of any testimony directly challenging the installation of the product</u> the plaintiff could have contributed to the cause of accident, <u>so the res ipsa inference fails on that prong</u>.

[(Emphasis added).]

Finally, without any inference of negligence under res ipsa loquitur, the judge determined "there's inadequate evidence of a breach of duty to properly install the device and a lack of evidence of causation as well." The judge again cited to the "equally acceptable and plausible argument that plaintiff fell because of her medical condition" and the "absence of some testimony as to the cause of the fall" to find that the causation prong of the negligence standard also was not met. The judge concluded plaintiff failed to establish a genuine issue of material fact and granted defendant's motion. This appeal followed.

On appeal, plaintiffs only argue the motion judge should have denied summary judgment by applying res ipsa loquitur to the facts she found and inferring defendant's negligence from those facts. We disagree and affirm, substantially for the reasons expressed by the motion judge, except for her conclusions about the application of the "exclusive control" element of res ipsa loquitur.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). In our review, we accord no special deference to a motion judge's assessment of the documentary record, as the decision to grant or withhold summary judgment does not hinge upon a judge's determinations of the credibility of testimony rendered in court, but instead amounts to a ruling on a question of law. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (noting that no "special deference" applies to a trial court's legal determinations).

Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny

11

v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c).  If "the evidence is so one-sided that one party must prevail as a matter of law," courts will "not hesitate to grant summary judgment."  Brill, 142 N.J. at 540 (internal quotation marks omitted) (citation omitted).

While a court must view the evidence in the light most favorable to the non-movant, "[c]ompetent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'"  Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009)).  A motion for summary judgment will not be defeated by bare conclusions lacking factual support, Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011), self-serving statements, Heyert v. Taddese, 431 N.J. Super. 388, 414 (App. Div. 2013), or disputed facts "of an insubstantial nature."  Pressler & Verniero, Current N.J. Court Rules, cmt 2.2 on R. 4:46-2 (2022).

With these guiding principles in mind, we turn to the doctrine of res ipsa loquitur, which provides an exception to a plaintiff's obligation to prove negligence.  Without resort to the doctrine, "it is ordinarily a plaintiff's burden to prove negligence, and [negligence] is never presumed."  Khan v. Singh, 200

N.J. 82, 91 (2009) (citation omitted). Negligence is established by proof that a defendant (1) owed plaintiff a duty of care; (2) breached that duty; (3) the breach was the cause of plaintiff's damages; and (4) plaintiff suffered actual damages. Townsend, 221 N.J. at 51 (citation omitted).

The doctrine represents a rule of circumstantial evidence of a defendant's negligence. Roper v. Blumenfeld, 309 N.J. Super. 219, 230 (App. Div. 1998). It "permits an inference of [a] defendant's negligence," Buckelew, 87 N.J. at 525, where plaintiff has shown 1) the injury itself "ordinarily bespeaks negligence," 2) the instrumentality causing the injury was within the defendant's exclusive control, and 3) there is no indication that the plaintiff contributed to her own injury. Khan, 200 N.J. at 91; see also Jerista v. Murray, 185 N.J. 175, 192 (2005). And, if established by a plaintiff, while it will not "shift the burden of proof to the defendant, it ordinarily assures the plaintiff a prima facie case that will survive summary judgment." Jerista, 185 N.J. at 193 (emphasis omitted). Where a plaintiff fails to "present evidence to establish all three factors required for the application of" res ipsa loquitur, she is not entitled to its application. Saks v. Ng, 383 N.J. Super. 76, 91 (App. Div. 2006).

In applying the doctrine to the facts she found in this case, the motion judge placed too much emphasis on the element of exclusive control when she

relied upon the fact that the toilet seat "was installed and then the employee left the residence and some period of time passed and the defendant was clearly not in control. There's no allegation that the defendant was in control of the device at the time that the accident occurred." (Emphasis added). The fact that defendant was no longer in actual control of the alleged instrumentality of plaintiff's injury no longer necessarily dictates whether res ipsa loquitur should be applied.

For that reason, the term "exclusive control" has generated much confusion. The term was indeed once taken literally to mean the defendant had to have "exclusive control" of the instrumentality at the time of the alleged negligent act. See Brown v. Racquet Club of Bricktown, 95 N.J. 280, 290 (1984); Restatement (Third) of Torts: Physical and Emotional Harm § 17 cmt. b (Am. Law Inst. 2010) (Third Restatement) (noting "the exclusive-control criterion is often effective in identifying the negligent party," but "frequently exclusive control functions poorly as such a proxy"). While proof of exclusive control of the instrumentality can still be used to satisfy the second prong of the res ipsa loquitur doctrine, the motion judge here mentioned it only in passing, and did not apply the broader definition of exclusive control that states the second prong "does not require that a plaintiff exclude all other possible causes

14

of an accident," rather it may also be met through a less stringent showing that "it is more probable than not that defendant's negligence was a proximate cause of the mishap." Luciano, 306 N.J. Super. at 313 (citing Brown, 95 N.J. at 291-92).

In order to establish "exclusive control," a plaintiff must produce "competent evidence that 'reduces the likelihood of other causes so that the greater probability of fault lies at defendant's door.'" Szalontai v. Yazbo's Sports Care, 183 N.J. 386, 400 (2005) (quoting Jimenez v. GNOC, Corp., 286 N.J. Super. 533, 545 (App. Div. 1996)). Without that evidence, a plaintiff cannot invoke "[r]es ipsa loquitur [as it] is not a panacea for the less-than-diligent plaintiff or the doomed negligence cause of action." Ibid.

Having said that, we conclude from our review, even when applying the correct standard and viewing the evidence before us in the light most favorable to plaintiff, there is still nothing in the record to suggest that it was more probable than not defendant was negligent, or that Karen's injury "ordinarily bespeaks negligence," or that Karen did not contribute to her own injury. See Khan, 200 N.J. at 91.

Res ipsa loquitur is ordinarily impressed only "where the injury more probably than not has resulted from negligence of the defendant." Anderson v.

Somberg, 67 N.J. 291, 299 (1975).  See also Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 95 (1999) (citing Buckelew, 87 N.J. at 526).  "Whether an occurrence 'ordinarily bespeaks negligence' depends on the balance of probabilities being in favor of negligence."  Buckelew, 87 N.J. at 526.  "[T]he doctrine becomes inapplicable when the circumstances have been so completely elucidated that no inference of defendant's liability can reasonably be made."  Brown, 95 N.J. at 292 (quoting Lustine-Nicholson Motor Co. v. Petzal, 268 F.2d 893, 894 (D.C. Cir. 1959)).

The only facts established by plaintiffs in response to the summary judgment motion was that defendant installed the seat and Karen fell.  There was nothing to even suggest that the installation was improper or that Karen could not have fallen but for defendant's negligence.  Rather, the facts established other reasons could have caused Karen to fall to the extent that those reasons more likely caused her accident as compared to defendant's unidentified negligence, if any.  For example, Karen's disability could have caused the fall.  Because of her mobility issues, Karen recognized the need for her husband to help her sit down on the seat, but she failed to ask for his help to stand up.  Moreover, the seat's instructions clearly stated how a user should place themselves on the seat and cautioned against using the armrests to support their

16

full weight, yet Karen never read the instructions and she stated that she used the armrests to push herself up.

Contrary to plaintiffs' contentions on appeal, the facts in this case are not like those addressed in Jerista where the plaintiff was injured by a store's automatic closing door over which she had no control. Jerista, 185 N.J. at 200. So too are they unlike a situation where an injured pedestrian claims negligence against a driver who drives a new car for the first time and the brakes fail, causing injury to the pedestrian. Under those circumstances, the injured party and even the driver could pursue a claim against the automobile's manufacturer under res ipsa loquitur despite the fact that the driver had exclusive control. See Third Restatement § 17 cmt. b.

Here, the facts developed on summary judgment did not "bespeak defendant's negligence" nor did they exclude the possibility that Karen contributed to her own injury. Therefore, defendant's negligence could only be established by some evidence that it did something wrong. At a minimum, there had to be some evidence that defendant did not install the product correctly or failed to satisfy some other duty.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3562-19